Nos. 26-1141 & 26-1195

# In the United States Court of Appeals for the First Circuit

AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, *ET AL.*,

*Plaintiffs - Appellees,*

v.

MARCO RUBIO, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE, *ET AL.*,

*Defendants - Appellants.*

*On Appeal from the U.S. District Court
for the District of Massachusetts
Docket No. 1:25-cv-10685-WGY*

## UNOPPOSED MOTION FOR A PARTIAL STAY PENDING APPEAL

BRETT A. SHUMATE
 *Assistant Attorney General*

ETHAN B. KANTER
 *Chief, National Security Unit*

PAUL F. STONE
LINDSAY M. MURPHY
 *Deputy Chiefs, National Security Unit
 Office of Immigration Litigation
 Civil Division, U.S. Department of Justice
 Post Office Box 878, Ben Franklin Station
 Washington, D.C.  20044*

MARCH 25, 2026              ATTORNEYS FOR RESPONDENT

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................. 1

BACKGROUND ..................................................................................3

ARGUMENT.......................................................................................6

I.      The Government Is Likely to Succeed on its Challenge to the
        Sanction Portion of the Order........................................................... 7

    A.      The Sanction is barred by the INA's channeling and
        jurisdiction-stripping provisions.................................................... 7

    B.      The Sanction violates the Federal Rules of Civil Procedure,
        infringes on the operations of other district courts, and
        exceeds the court's equitable authority ...................................... 13

II.     The Government Will be Irreparably Harmed Absent a Stay.............17

CONCLUSION...................................................................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

## CASES

Page(s)

*AAUP v. Rubio,*
780 F. Supp. 3d 350 (D. Mass. 2025) ........................................................4

*AAUP v. Rubio,*
802 F. Supp. 3d 120 (D. Mass. 2025) ........................................................4

*AAUP v. Rubio,*
2026 WL 686418 (D. Mass. Mar. 11, 2026) .........................................6, 15

*Aguilar v. USICE,*
510 F.3d 1 (1st Cir. 2007) ........................................... 8, 9, 11, 19

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ................................................................ 16

*Bivens v. Six Unknown Fed. Narcotics Agents,*
403 U.S. 388 (1971) ...............................................................17

*Bruce v. Citigroup Inc.,*
75 F.4th 297 (2d Cir. 2023) ................................................... 16

*Chamber of Commerce of the United States v. Whiting,*
563 U.S. 582 (2011) ...............................................................17

*Fiallo v. Bell,*
430 U.S. 787 (1977).................................................................20

*Garland v. Aleman Gonzalez,*
596 U.S. 543 (2022)........................................................... 12, 13

*Gasperini v. Ctr. For Humanities, Inc.,*
518 U.S. 415 (1996) ................................................................15

*Hernandez v. Mesa,*
593 U.S. 93 (2020) ........................................................... 16, 17

- ii -

*Jennings v. Rodriguez,*
583 U.S. 281 (2018) ................................................................11

*Khalil v. President,*
164 F.4th 259 (3d Cir. 2026) ............................................. 10, 11

*Mathews v. Diaz,*
426 U.S. 67 (1976) ................................................................ 19

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
339 U.S. 306 (1950) ............................................................. 14

*New Motor Vehicle Bd. v. Orrin W. Fox Co.,*
434 U.S. 1345 (1977) ............................................................20

*Nieves v. Bartlett,*
587 U.S. 391 (2019) ..............................................................17

*Nken v. Holder,*
556 U.S. 418 (2009) ............................................................... 7

*Noem v. Vasquez Perdomo,*
146 S. Ct. 1 (2025) ............................................................... 19

*Reno v. Am.-Arab Anti-Discrim. Comm.,*
525 U.S. 471 (1999) ....................................................8, 12, 19

*Savoury v. U.S. Attorney Gen.,*
449 F.3d 1307 (11th Cir. 2006) .............................................20

*Sofinet v. INS,*
188 F.3d 703 (7th Cir. 1999) ................................................20

*Steel Co. v. Citizens for Better Environment,*
523 U.S. 83 (1998) ............................................................... 13

*United States v. Martinez-Fuerte,*
428 U.S. 543 (1976) .............................................................20

*United States v. Sineneng-Smith,*
  590 U.S. 371 (2020) ............................................................. 2

*Younger v. Harris,*
  401 U.S. 37 (1971) ........................................................... 19

*Ziglar v. Abbasi,*
  582 U.S. 120 (2017) ......................................................... 17

## STATUTES

## Immigration and Nationality Act of 1952, as amended:

8 U.S.C. §1229a ................................................................. 13

8 U.S.C. §1252(a)(5) ......................................................... 8, 9

8 U.S.C. §1252(f)(1) ................................................ 2, 7, 8, 12, 13

8 U.S.C. §1252(g) .......................................................... 2, 7, 11, 12

8 U.S.C §1252(b)(9) .................................................... 2, 7, 8, 9, 10, 11

## RULES

Fed. R. Civ. P. 65 ............................................................... 14

Fed R. Civ. P. 65(a)(2) ........................................................ 4

Fed. R. Civ. P. 65(d)(2) ....................................................... 14

## **INTRODUCTION**

The district court held unlawful a putative "policy" of targeting aliens for removal based on their speech and entered judgment for two plaintiff associations: the American Association of University Professors (AAUP) and Middle East Studies Association (MESA). The government has appealed the district court's final judgment and will explain the court's errors on the merits in due course. The issue presented in this motion is narrow and straightforward, however: this is an *unopposed* motion for a partial stay pending appeal regarding a portion of the remedy below. Given its unopposed nature, this Court should simply grant this request and defer consideration of the merits until after full briefing is complete.

Relevant here, the district court invented an unprecedented remedy that defies statutory law, the Constitution, and the Federal Rules of Civil Procedure. Specifically, the court's remedy includes a "Sanction" that creates a new private right of action in district court through which certain alien members of the plaintiff organizations may secure an *automatic* injunction against any "adverse immigration action," as well as the alien's removal, without notice to (let alone service upon) the government. *See* Annotated Judgment, *AAUP v. Rubio*, No. 1:25-cv-10685 (D. Mass. Mar. 11, 2026), ECF

No. 313 at 3-7 ("Order") (Exhibit A).[1]  The district court granted this relief even though it was never requested by Plaintiffs, flouting the party-presentation principle of *United States v. Sineneng-Smith*, 590 U.S. 371, 380 (2020).

That relief is plainly unlawful.  It violates multiple jurisdictional review bars of the Immigration & Nationality Act ("INA"), which channels *all* challenges to decisions of the Executive to "commence proceedings" against an alien, and review of "all questions of law and fact … arising from any action taken or proceeding brought to remove an alien," to the courts of appeals through a petition-for-review.  8 U.S.C §§1252(b)(9), (f)(1), (g).  Moreover, the Sanction's imposition of an "automatic[] stay" of any adverse immigration proceeding violates the INA's prohibition on non-individualized injunctive relief that restrains the Executive's operation of its statutory detention and removal authorities.  8 U.S.C.  §1252(f)(1).  Finally, the district court's creation of a new federal cause of action transgresses the Federal Rules of Civil Procedure, the Fifth Amendment, and basic principles of notice and fundamental fairness.  Defendants are thus likely to prevail on appeal as to the Sanction remedy challenged here.

---

[1] All ECF cites are to the district court's docket.

Defendants will suffer irreparable harm absent the requested partial stay, and the remaining equitable factors likewise support that relief. By the Sanction's design, it will be impossible for the government to know, at any given point in time, (i) whether its immigration-enforcement actions involve an alien who is covered by the Sanction, or (ii) if a lawsuit envisioned by the Sanction has even been filed—thereby exposing the government to potential sanctions and further disruptive, unnecessary litigation. The net effect of the Sanction is thus to chill the government's efforts to carry out the duly enacted immigration laws.

Again, this is not relief that Plaintiffs sought, and Plaintiffs have not opposed a stay pending appeal of this component of the remedial order. This Court should take a different path, and grant this still-unopposed stay request on the simple basis that it is uncontested.

## BACKGROUND

**A.** AAUP and MESA are university faculty and student associations, which include members who are aliens. In March 2025, they filed suit alleging, *inter alia*, that the government violated the First Amendment and the Administrative Procedure Act ("APA") by implementing a so-called "ideological deportation policy" of "arresting, detaining, and deporting" alien students and faculty solely because they have engaged in "pro-Palestinian

- 3 -

protests" and related "expression and association."  ECF No. 1 ¶¶ 1, 30, 134, 136, 139.

Plaintiffs moved for a preliminary injunction, and the district court consolidated the preliminary injunction hearing with a "trial on the merits," under Fed R. Civ. P. 65(a)(2).  ECF No. 73 at 6 n.4; *AAUP v. Rubio*, 780 F. Supp. 3d 350, 360-61 n.4 (D. Mass. 2025).  On September 30, 2025, the district court issued a merits decision.  ECF No. 261; *AAUP v. Rubio*, 802 F. Supp. 3d 120 (D. Mass. 2025). The court held that the government had implemented a purported enforcement policy targeting for removal certain alien student protestors for their constitutionally protected expression.  ECF No. 261 at 101; *AAUP*, 802 F. Supp. 3d at 175.  The court also ruled that the putative enforcement policy violated the APA.  ECF No. 261 at 138-140; *AAUP*, 802 F. Supp. 3d at 190-91.

**B.**    After briefing on appropriate remedies, the district court issued its final judgment.  The court declared that the purported enforcement policy violated the First Amendment, and it vacated the alleged policy under the APA.  Order at 2-3.

The court then went further and imposed a novel remedy that Plaintiffs had never requested.  As a "Sanction," the court ordered that certain alien

- 4 -

members of AAUP and MESA[2] "shall have a right" to institute a "Sanction Action" in any U.S. district court if the member has "suffered an adverse immigration action changing [his or her] immigration status." *Id.* at 4-5. The filing of a "Sanction Action" (1) "voids the alteration in immigration status" unless the government rebuts the presumption of retribution *and* (2) "automatically stay[s]" the Sanction Plaintiff's removal from the United States pending the resolution of the action. *Id.* at 5-6. And in such an action, the district court decreed, it is "presumed that the alteration in immigration status is in retribution for the exercise … of their First Amendment rights." *Id.* at 4-5. Finally, the Sanction imposed on the government "the burden affirmatively to ascertain and determine whether such person has filed a Sanctions Action" by checking PACER. *Id.* at 7 & n. 7.

The district court "retain[ed] jurisdiction to enforce or modify" its judgment, but it disclaimed "jurisdiction over any Sanction Action," which "shall be subject to the jurisdiction of the appropriate United States District Judge presiding in such Sanction Action." Order at 7.

---

[2]  Specifically, the Sanction applies to "[a]ny non-citizen member of the plaintiffs AAUP or MESA, who was a member on or after March 25, 2025, and continued as a member through September 30, 2025." Order at 4.

**C.** The government appealed and moved the district court to stay the Sanction pending appeal. ECF No. 317 (motion to stay); ECF No. 328 at 16-17, Feb. 26, 2026, stay hearing, pp. 16-17 (Exhibit B). The government also requested a stay of the declaration of rights and vacatur, but only to the extent they could be misinterpreted as coercive relief. *Id.* Plaintiffs responded that they did not oppose a stay of the Sanction. ECF No. 322. Plaintiffs also cross-appealed. ECF No. 324.

Nonetheless, the district court denied Defendants' motion as to all but two collateral issues—staying the Sanction's "automatic stay" only insofar as it would restrain "the interdistrict movement of any Sanction Plaintiffs so that the provision only applies as to the removal from the United States" and delaying the requirement of checking PACER until prior to involuntary removal. ECF No. 330 at 25, 28; *AAUP v. Rubio*, 2026 WL 686418, *10-11 (D. Mass. Mar. 11, 2026). The district court refused to credit the unopposed nature of Defendants' motion on the theory that "[t]he parties [] are forum shopping" simply because the parties (including Plaintiffs) had appealed the district court's judgment to this Court. ECF No. 330 at 2-5 (characterizing Plaintiffs' non-opposition as merely facilitating review in "the forum they apparently consider most congenial"). The court denied the remainder of the government's motion to stay.

## ARGUMENT

A stay pending appeal of the district court's "Sanction" remedy is warranted because the government has a strong likelihood of success on the merits, the balance of harms and public interest favor a stay, and the "Sanction" threatens to irreparably harm the government absent a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

## I.   The Government Is Likely to Succeed on its Challenge to the Sanction Portion of the Order.

The Sanction violates multiple jurisdiction-stripping provisions of the INA and otherwise exceeds the court's authority. Specifically, the Sanction: (1) is precluded by 8 U.S.C. §§1252(b)(9) and (g); (2) transgresses 8 U.S.C. §1252(f)(1)'s prohibition on non-individualized injunctive relief; (3) violates the Federal Rules of Civil Procedure and the Constitution; and (4) exceeds the district court's equitable powers by creating a new cause of action. The government is therefore likely to succeed on the merits of its appeal.

### A.   The Sanction is barred by the INA's channeling and jurisdiction-stripping provisions.

The Sanction created a newly minted cause of action for certain of Plaintiffs' members who experience "an adverse immigration action" and provides that (1) "[u]pon commencement" of such action, "the Sanction Plaintiff's removal from the United States is automatically STAYED during the pendency of the Sanction Action"; and (2) in such action, the adverse

- 7 -

immigration action is automatically "void[ed]," unless the government can rebut the presumption that the action was in retaliation for First Amendment conduct. Order at 5-6. This novel relief violate the INA's channeling provisions in 8 U.S.C. §§1252(b)(9), (g), as well as the prohibition on non-individualized injunctive relief in §1252(f)(1).

**Section 1252(b)(9):** Congress created a comprehensive and exclusive remedial scheme, channeling challenges to decisions, actions, and proceedings related to the removal of aliens through the immigration court and any subsequent review in the court of appeals. Section 1252(b)(9) directs that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien … shall be available only in judicial review of a final order under this section." 8 U.S.C. §1252(b)(9). And Congress prescribed a single path for judicial review of removal orders: "a petition for review filed with an appropriate court of appeals." *Id.* §1252(a)(5). Together these provisions create "an unmistakable 'zipper' clause" whose "expanse is breathtaking." *Aguilar v. USICE*, 510 F.3d 1, 9 (1st Cir. 2007) (quoting *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482-83 (1999) ("*AADC*")).

The Sanction violates these fundamental limitations on district court jurisdiction. First, it provides that if a "Sanction Plaintiff" brings an action in "United States District Court" to challenge any "adverse immigration action," the commencement of that "Sanction Action" automatically "stay[s]" "the Sanction Plaintiff's removal" for the duration of the action and presumptively "voids" the alteration of immigration status. Order at 4-6. So, for example, if the government revoked the visa of a "Sanction Plaintiff" and commenced removal proceedings, the Sanction would automatically stay removal and void the revocation. That contradicts the command of §1252(b)(9) that "*all* questions of law and fact" that "arise from *any* action taken or proceeding brought to remove an alien from the United States … shall be available *only* in judicial review of a final order" to the appropriate court of appeals. 8 U.S.C. §1252(b)(9); *see id.* §1252(a)(5). The Sanction creates a cause of action to proceed in federal district court, but §1252(b)(9) commands that all such claims be channeled elsewhere.

That follows from this Court's decision in *Aguilar*, which held that §1252(b)(9) deprived the district court of jurisdiction to review certain claims raised in a habeas petition. *See* 510 F.3d at 9-14. Noting the "breathtaking" scope of §1252(b)(9), this Court rejected those petitioners' contentions that §1252(b)(9) did not apply to actions that occur "prior to the

- 9 -

institution of any formal removal proceedings," because the Court held that "[r]eading the statute" to be limited "to claims that arise from ongoing removal proceedings" would create a rush-to-the-courthouse dynamic and require the Court to re-write the statute. *Id.* at 10.

The Third Circuit in *Khalil v. President*, 164 F.4th 259 (3d Cir. 2026), recently interpreted §1252(b)(9) to forbid *exactly* this kind of circumvention of the statute's channeling function. That decision is particularly instructive here because Plaintiffs here relied on the Executive's actions to remove Khalil as one of the centerpieces of their claims and the district court's Sanction remedy appears to be designed to challenge such actions. *See, e.g.*, ECF No. 1 ¶¶ 1, 2, 30, 32-37, 42, 43, 46, 104, 106, 109.

In that case, Khalil filed a habeas petition alleging that his detention and DHS efforts to remove him violated the First Amendment and due process. *See Khalil*, 164 F.4th at 266-67. The Third Circuit held that §1252(b)(9) divested the district court of subject-matter jurisdiction over Khalil's habeas petition and remanded "with instructions to dismiss the petition." *Id.* at 281. It explained that §1252(b)(9) channels all "questions" "arising from" proceedings to removal an alien, so long as those legal questions can be "meaningfully" reviewed on a petition for review to the relevant court of appeals. *Id.* at 274-75. Importantly, "it is not enough to

assert an injury that cannot be remedied later." *Id.* at 275. Applying those principles, the Third Circuit held that each of Khalil's challenges—including his claim that his First Amendment rights were violated—"can [be] litigate[d] … on a [petition for review] after the Board issues a final order of removal." *Id.* at 276.[3]

The Sanction is incompatible with those principles. If the government were to initiate removal proceedings against a Sanction Plaintiff, §1252(b)(9) would require that those claims be channeled through immigration proceedings and ultimately to the relevant court of appeals on a petition for review. Federal district courts lack "any role in that sequence." *Khalil*, 164 F.4th at 274. The Sanction's provision for commencement of proceedings in federal district court to adjudicate those precise issues contravenes §1252(b)(9).

**Section 1252(g):** For similar reasons, the Sanction violates §1252(g)'s directive that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by

---

[3] Relying on *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Third Circuit also held that §1252(b)(9) applies fully *before* a final order of removal is entered. *See Khalil*, 164 F.4th at 277-78. The First Circuit has likewise applied §1252(b)(9) *before* issuance of a final order of removal. *See Augilar*, 510 F.3d at 7.

the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter," except through a petition for review from a final removal order.  8 U.S.C. §1252(g).  By its terms, §1252(g) prohibits exactly what the Sanction requires:  litigation in district court to "hear" a "cause or claim" challenging the government's "decision or action … to commence proceedings" against any alien.  *Id*.; *see AADC*, 525 U.S. at 487 ("challenge to the Attorney General's decision to 'commence proceedings' … falls squarely within §1252(g)").

**Section 1252(f)(1):**  The Sanction also violates 8 U.S.C. §1252(f)(1), which states that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" certain INA provisions governing removal, "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated."  Section 1252(f)(1) thus "generally prohibits … injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the … [covered] provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022).

By directing that the "removal" of any Sanction Plaintiff is "automatically STAYED" upon the commencement of a "Sanction Action," the Order violates §1252(f)(1).  Order at 6.  There is no question that the INA

provisions under which an alien would be removed—8 U.S.C. §§1229a, 1231—are covered by §1252(f)(1). Nor can there be any dispute that a "stay[]" of removal "enjoin[s] or restrain[s]" the "operation" of those provisions; by its terms, the Sanction "require[s] offices to ... refrain from actions that (again in the Government's view) are allowed." *Aleman Gonzalez*, 596 U.S. at 551. Finally, the Sanction is not limited to "a particular alien," *id.* at 550, but instead applies prospectively in favor of *all* "Sanction Plaintiffs." Order at 5-6. The automatic stay is a patent violation of §1252(f)(1).

Where a district court lacks jurisdiction, it "cannot proceed at all in any cause," including by entering any form of relief. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 93-102 (1998). Instead, "the only function remaining ... is that of announcing the fact and dismissing the cause." *Id.* Under §§1252(b)(9) and (g), the district court in a Sanction Action would lack jurisdiction to grant any relief; and, under §1252(f)(1), the district court here lacked jurisdiction to grant relief acting as an injunction. For those reasons, the government is likely to prevail on appeal.

**B.    The Sanction violates the Federal Rules of Civil Procedure, infringes on the operations of other district courts, and exceeds the court's equitable authority.**

Jurisdiction aside, the district court also exceeded its authority in at least three other ways by imposing its Sanction remedy.

*First*, the Sanction violates Federal Rule of Civil Procedure 65. That rule states unequivocally that an injunction "binds only" "the parties" "who receive *actual notice* of it by personal service or otherwise." Fed. R. Civ. P. 65(d)(2) (emphasis added). The Sanction cannot be squared with this basic requirement: It provides for a prospective and "automatic[] STAY[]" of any removal proceedings upon "commencement" of an action by a "Sanction Plaintiff" and places "the burden" on the United States "affirmatively to ascertain and determine whether such person has filed a Sanction Action in the United States District Courts." Order at 7. It does not require a plaintiff to *notify* the government that it has been sued; as the district court candidly stated, the Sanction requires the government to "check … PACER." Order at 7 n.7. That burden-flipping mandate cannot be squared with Rule 65(d)(2), not to mention basic principles of fairness. And because the Sanction purports to impose binding obligations on governmental officials in the absence of notice to such effect, the Sanction also violates the Fifth Amendment's Due Process Clause. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (Jackson, J.) (notice is "[a]n elementary and

- 14 -

fundamental requirement of due process in any proceeding which is to be accorded finality").[4]

*Second*, the Sanction purports to control proceedings and provide relief in *other district courts* over which it has no power, and over which the district court conceded it has no jurisdiction. Order at 7. The Sanction is explicit that this is its effect, providing that a "Sanction Plaintiff" has "a right to institute a proceeding in the United States District Court in which the Sanction Plaintiff resided," and the district court disclaimed "retain[ing] jurisdiction over any [such] action"—providing instead that it "shall be subject to the jurisdiction of the appropriate United States District Judge presiding in such Sanction Action." Order at 4, 7. Nonetheless, the Sanction directs how those proceedings should proceed and play out and grants a preliminary "stay" in those cases. Federal district courts do not have authority to dictate or control the outcome of proceedings in another federal district court. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 430

---

[4] The district court's partial stay order limits the requirement to check for a Sanctions Action such that the government must do so "*only* prior to *involuntary removal from the United States.*" *See* ECF No. 330 at 28; *AAUP*, 2026 WL 686418 at *11 (emphasis in original). Regardless, this leaves in effect the other injunctive aspects of the Sanction. *Supra,* p. 5. Additionally, the government does not know the identities of Plaintiffs' members, so it still runs a contempt risk if it does not check PACER for all aliens before they are removed.

n.10 (1996) ("If there is a federal district court standard, it must come from the Court of Appeals, not from the … district court judges."); *see also Bruce v. Citigroup Inc.*, 75 F.4th 297, 303 n.6 (2d Cir. 2023) (holding Bankruptcy Court could not enforce other courts' discharge orders). Nor do they have authority to grant preliminary relief in cases pending in other courts. That is especially true when the court has no jurisdiction over the litigation itself.

*Finally*, the district court's creation of a new cause of action exceeds the scope of the district court's equitable authority. The Supreme Court has repeatedly held that creating federal causes of action—including for constitutional violations—is for Congress, not the courts: "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). This is true "[i]n both statutory and constitutional cases." *Hernandez v. Mesa*, 593 U.S. 93, 101 (2020).

The Sanction invades the province of Congress, which did not authorize the new "Sanction Action," and it does not purport to rely on any congressional authorization. Instead, it invokes *only* the district court's "broad equitable powers of remediation" to "protect certain of the Plaintiffs' non-citizen members from any retribution for the free exercise of their constitutional rights." Order at 4. But the Supreme Court has rejected such a free-floating power of federal courts to "adjust their remedies so as to grant

the necessary relief when federally protected rights have been invaded." *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017) (quoting *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 392 (1971)); *see also Hernandez*, 593 U.S. at 99-101 (same).

In addition, the Sanction's presumption of unconstitutionality amounts to a preclearance regime for removal proceedings never legislated by Congress. Order at 5. The INA creates a comprehensive scheme governing removal proceedings *and* avenues for challenging the grounds for removal. *See Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582, 587 (2011). The district court's pronouncement of a presumption of unconstitutionality has no basis in the immigration laws that Congress has adopted; indeed, by adding new requirements on top of those Congress did specify, the court's new remedy effectively amended the immigration laws, contrary to fundamental limits on the judicial power. And to make matters worse, the district court's order turns upside down the presumption of regularity that generally attaches to official acts. *See Nieves v. Bartlett*, 587 U.S. 391, 399-400 (2019) (explaining that when presumption of regularity is suspended in retaliation cases, the plaintiff has the burden to prove lack of probable cause).

## II.     The Government Will be Irreparably Harmed Absent a Stay.

The government will suffer irreparable harm absent a partial stay, and the balance of harms and public interest overwhelmingly favor a stay.

The Sanction places the burden on the government "to determine whether a Sanction Action has been filed." Order at 6-7. Although the district court delayed the requirement of checking PACER until prior to involuntary removal, *see supra*, p. 6, the fact remains that the government *does not know* the identities of Plaintiffs' members who are encompassed by the Order, except for the few who testified at trial. *See* ECF No. 317-1; Agudelo Decl. ¶ 8 (Exhibit C). The result is that no matter how diligently the government complies with the obligation to monitor PACER, it will be impossible to know whether, at any given point in time, a Sanction Action has been filed. And because the government does not know the identities of Plaintiffs' members, it must check PACER for *every single* removal to ensure compliance. *See* ECF No. 328 (remedies hearing) at pp.8-11. In short, even as modified, the Order makes it impossible for the government to ensure its own compliance.

The harm is worsened by the Sanction's direct interference with the streamlined immigration regime Congress created. The upshot will be the exact "deconstruction, fragmentation, and hence prolongation of removal

- 18 -

proceedings" that Congress deliberately sought to prevent by streamlining removal proceedings. *AADC*, 525 U.S. at 485 87. The government will be harmed by this "scattershot" approach. *See Aguilar*, 510 F.3d at 9.

In light of these practical obstacles, the Sanction ultimately will chill the government's efforts to enforce the duly enacted immigration laws, even on indisputably lawful grounds that do not implicate the First Amendment. *See* Agudelo Decl. ¶ 8, 9 (Exhibit C). Such chilling effect on the Executive's prerogative and obligation to "take Care that the Laws be faithfully executed" is itself an irreparable harm. U.S. Const., art. II §3; *see Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 4 (2025) (Kavanaugh, J. concurring) (government suffers irreparable harm from district court order that "inevitably chill[s] lawful immigration enforcement efforts").

That harm is particularly acute given the heightened showing of harm that has traditionally been required before a court will enjoin an administrative proceeding. *See, e.g., Younger v. Harris*, 401 U.S. 37, 46 (1971). This principle has special salience in the immigration context, where the Supreme Court has long recognized that the Constitution has delegated responsibility over immigration matters to Congress and the Executive. *See Mathews v. Diaz*, 426 U.S. 67, 81 (1976). For that reason, judicial review over

- 19 -

immigration matters has been exceedingly narrow. *See, e.g., Fiallo v. Bell*, 430 U.S. 787, 792 (1977).

The balance of harms and public interest also favor a stay pending appeal. Plaintiffs have yet to show that any of their members suffered an adverse immigration action based on their protected speech, and the district court did not find a likelihood of such action. Indeed, the fact that this motion is unopposed is powerful evidence that Plaintiffs face no irreparable harm from a stay. By contrast, the public interest in enforcement of immigration laws is significant. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976). And the government acts "in the public interest when it enforces the immigration laws of this country." *Savoury v. U.S. Attorney Gen.*, 449 F.3d 1307, 1320 (11th Cir. 2006); *see Sofinet v. INS*, 188 F.3d 703, 708 (7th Cir. 1999) (weighing "the public interest in the speedy and effective enforcement of the immigration laws"). Any order that enjoins a governmental entity from enforcing actions taken pursuant to statutes enacted by the duly elected representatives of the people constitutes an irreparable injury that weighs heavily against the entry of injunctive relief. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

## **CONCLUSION**

For the foregoing reasons, the Court should stay pending appeal the portion of the district court's judgment imposing the "Sanction."

Respectfully submitted,

Brett A. Shumate
  *Assistant Attorney General*

  /s/ Ethan B. Kanter
ETHAN B. KANTER
  *Chief, National Security Unit*

PAUL F. STONE
LINDSAY M. MURPHY
  *Deputy Chiefs, National Security Unit*
  *Office of Immigration Litigation*
  *Civil Division, U.S. Department of Justice*
  *Post Office Box 878, Ben Franklin Station*
  *Washington, D.C.  20044*
  *Telephone: (202) 305-9647*
  *Facsimile: (202) 307-8698*

MARCH 25, 2026                    ATTORNEYS FOR RESPONDENT

- 21 -

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this motion complies with the type-volume limitation in Federal Rule of Appellate Procedure 27(a) because it  4,399 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f).  The motion's type size and type face comply with Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared using Microsoft Word in Georgia 14-point font, a proportionally spaced typeface.

  /s/ Ethan B. Kanter
ETHAN B. KANTER
  *United States Department of Justice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2026, I electronically filed the foregoing motion with the Clerk for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

      /s/ Ethan B. Kanter

ETHAN B. KANTER
*United States Department of Justice*